UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE: VERNON HAROLD MAY,
Debtor,

FIA CARD SERVICES, N.A.,

       Appellant,

v.

VERNON HAROLD MAY,

       Appellee.
_____/

CASE NO. 1:10-CV-576

HON. ROBERT J. JONKER

RELATED CASE NO. 1:10-CV-695

## **OPINION**

Appellant FIA Card Services, N.A.'s ("FIA") appeals two related decisions of the United States Bankruptcy Court from the Western District of Michigan (Bankruptcy Case No. 09-04644 and Adversary Proceeding 09-80323). Neither party has requested oral argument. The Court has thoroughly reviewed the record and carefully considered the applicable law. For the reasons described in this Opinion, the Court affirms the Bankruptcy Court decisions.

### **Background**

In the underlying bankruptcy proceeding, FIA sought under 11 U.S.C. § 523(a)(2)(A) to except from discharge a debt totaling $5,583.79 (the "Debt") Mr. May had incurred using a credit card issued to him well before he filed his bankruptcy petition. (Op. and Ord. after Trial, docket # 3-2, at 2.) Trial centered on the issues of "whether Mr. May made material misrepresentations regarding his intent to repay the charges he incurred, and whether he intended to deceive [FIA]." (*Id.* at 3.) At trial, the bankruptcy court "had the opportunity to judge [Mr. May's] demeanor and

credibility." (*Id.* at 3.) The bankruptcy court fully credited Mr. May's testimony and found explicitly that "when [Mr. May] incurred the charges at issue, he actually intended to repay [FIA] in accordance with the parties' agreement." (*Id.*)

The bankruptcy court made a series of background factual findings leading to his conclusions. He explained that Mr. May earned his living by working seasonally at a saw mill and maintaining a painting business in the saw mill's off-season. (*Id.*) In late 2008, around the time Mr. May incurred the charges in dispute, Mr. May "was experiencing medical difficulties involving, ultimately, the replacement of both knees and the prospect of shoulder surgery" and that "both conditions, while they persisted, prohibited him from earning a living." (*Id.*) Mr. May planned to have medical treatment and convalesce during the winter of 2008 and spring of 2009. (*Id.* at 4.) "He fully intended to return to work at the saw mill and in connection with his painting business in the spring of 2009, as he did in past years, and repay the Debt he had incurred in the meantime." (*Id.*) However, "contrary to his plans and his employment history[,]" Mr. May was not able to return to work. (*Id.*) Mr. May "had consistently made the minimum payments on the account at issue in this proceeding as well as other debts, and earned a favorable credit rating." (*Id.*) But in the context of an economic downturn and physical disabilities, it became difficult for him to meet his financial obligations, and on April 20, 2009, he petitioned for voluntary bankruptcy. (*Id.*)

At trial, FIA argued that the bankruptcy court should find fraudulent intent on Mr. May's part because Mr. May used a portion of cash advances from his FIA card to re-pay prior credit card balances. (*Id.*) The bankruptcy court rejected this argument for reasons linked closely to its factual findings. (*Id.* at 4-5.) In particular, the bankruptcy court reiterated that Mr. May "credibly testified that he intended to have surgery to remove his disability so he could return to

work once the saw mill's business resumed, and pay the Debt. (*Id.* at 4.) Circumstances intervened; "after one surgery, [Mr. May] discovered he needed at least two more, and by then the economic slow-down prevented the saw-mill from re-hiring him, contrary to Mr. May's experience in year's past." (*Id.*) The bankruptcy court inferred from Mr. May's testimony that Mr. May "regarded his minimum monthly payment obligation as part of his other necessary living expense, such as food, fuel, housing, and transportation expenses which he paid using the proceeds." (*Id.* at 5.) The bankruptcy court found Mr. May "a relatively unsophisticated borrower [who] used assets (fungible loan proceeds] to pay expenses that he regarded as payment priorities – including his Debt to [FIA]." (*Id.*) The bankruptcy court declined to "punish Mr. May for repaying part of his Debt, even if the source of the payment could be traced to the cash advances rather than, for example, his wife's modest earnings as a hotel chambermaid.'" (*Id.*)

The bankruptcy court found explicitly that FIA's position was not substantially justified and indicated it would consider awarding costs and a reasonable attorney's fee under 11 U.S.C. § 523(d). (*Id.* at 5-6.) The bankruptcy court's judgment entered before the bankruptcy court received a motion from Mr. May seeking costs and fees. (Op. and Ord., docket # 2-1, at 1-2.) Within a day, Mr. May filed a motion for attorney fees and costs, seeking an award of $3,784.47. (*Id.* at 2.) In its response to the motion, FIA argued primarily that its position was substantially justified because the Debt was presumed to be nondischargeable under 11 U.S.C. § 523(a)(2)(C)(i)(II). (*Id.*) The bankruptcy court rejected this argument because, among other things, "[Mr. May's] testimony handily rebutted the presumption." (*Id.*) FIA also argued that because Mr. May did not file a formal counterclaim requesting attorney's fees, Mr. May could not prevail on his motion seeking costs and fees. (*Id.*) The bankruptcy court rejected this argument as well, pointing out that Mr. May's Answer included a request for fees under 11

U.S.C. § 523(d), and finding that a more formal counter-claim was unnecessary to state a claim for fees and costs. (*Id.*) The bankruptcy court also rejected FIA's "hyper-technical reading of Rule 7008(b) as inconsistent with the text of the Rule itself and contrary tot he liberal pleading philosophy of the Federal Rules of Civil Procedure generally. (*Id.* at 3-4.)

FIA now appeals the bankruptcy court's decisions denying FIA's requested exception from discharge and awarding costs and a reasonable attorney's fee to Mr. May.

## Legal Standards and Analysis

"The bankruptcy court's findings of fact are reviewed for clear error, while its conclusions of law are reviewed de novo." *In re United Producers, Inc.*, 526 F.3d 942, 946 (6th Cir. 2008).

### *A.  The Bankruptcy Court properly denied FIA's motion for exception from discharge.*

In seeking to except the Debt from discharge, FIA relies upon 11 U.S.C. § 523(a)(2)(A), which excepts from discharge "any debt ... for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by ... false pretenses, a false representation, or actual fraud, other than a statements respecting the debtor's ... financial condition." 11 U.S.C. § 523(a)(2)(A). To succeed, FIA must prove by a preponderance of the evidence (1) that Mr. May "obtained money through a material misrepresentation that at the time [he] knew was false or made with gross recklessness as to its truth[;]" (2) that Mr. May intended to deceive FIA; (3) that FIA reasonably relied on the false representation; and (4) FIA's reliance proximately caused its loss. *See Longo v. McLaren* (*In re McLaren*), 3 F.3d 958, 961 (6th Cir. 1993). Under 11 U.S.C. § 523(a)(2)(C)(i)(II), "cash advances aggregating more than $875 that are extensions of consumer credit under an open end credit plan obtained by an individual debtor on or within 80 days before the order for relief under this title, are presumed to be

nondischargeable."

After reviewing the record, the Court finds no hint of error in the bankruptcy court's factual determinations, let alone clear error. FIA itself offers scant record evidence to call into question the bankruptcy court's findings of fact. Indeed, FIA's primary argument questioning the factual findings is its assertion that Mr. May's testimony that he intended to return to work "is inconsistent, at best, with his testimony that he applied for disability in November, 2008." (Br. of Appellant FIA Card Services, N.A., docket # 7, at 8.) The bankruptcy court, which had an opportunity to observe Mr. May closely and weigh his credibility considered this very evidence and found explicitly that Mr. May intended to return to work. (Op. and Ord., docket # 3-2, at 4-5.) The Court sees no basis to disturb this or any of the other factual findings of the bankruptcy court. Moreover, based on these factual findings, FIA cannot prevail upon its claim under 11 U.S.C. U.S.C. § 523(a)(2)(A), because it cannot satisfy the element of intent.

As it did before the bankruptcy court, FIA asserts that Mr. May fails to rebut the presumption that certain cash advances Mr. May took are nondischargeable. This assertion fails. The bankruptcy court found explicitly that Mr. May's testimony "handily rebutted the presumption." (Op. and Ord., docket # 2-1, at 2.) Based, among other things, upon the detailed factual findings the bankruptcy court made, the Court agrees. FIA raises no persuasive argument to the contrary; FIA simply posits that Mr. May's testimony cannot have created a substantial doubt of his intent to defraud. In the face of factual findings tethered closely to abundant evidence that Mr. May lacked any intent to defraud, this argument has no merit.

B. ***The Bankruptcy Court properly awarded costs and a reasonable attorney's fee to Mr. May.***

11 U.S.C. § 523(d) provides that

> [i]f a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, [unless] ... special circumstances would make the award unjust.

The bankruptcy court determined that FIA's claim was not substantially justified and awarded costs and a reasonable attorney's fee under section 523(d). FIA now appeals on purely procedural grounds it previously raised with the bankruptcy court. First, FIA argues that Mr. May is not entitled to fees and costs under section 523(d) because he did not file a separate, formal counter-claim seeking fees and costs. Second, FIA argues that because the bankruptcy court awarded fees and costs after it entered judgment and after the Notice of Appeal was filed, the award of fees and costs is invalid. Neither argument is convincing. The bankruptcy court explicitly and properly addressed the first argument, noting that Mr. May "clearly made a request for fees under 11 U.S.C. § 523(d) in the prayer for relief on the last page of his Answer" and rejecting FIA's "hyper-technical reading of Rule 7008(b) as inconsistent with the text of the Rule itself and contrary to the liberal pleading philosophy of the Federal Rules of Civil Procedure generally." (Op. and Ord., docket # 2-1, at 3-4.)

The bankruptcy court also explicitly and properly addressed the second argument. (*Id.* at 4-5.) The bankruptcy court accurately pointed to the general rule that the court "should not delay the entry of judgment on the merits pending resolution of fee awards," FED. R. CIV. P. 58(a), and correctly stated that "courts must generally regard fee awards as collateral to the principal decision on the merits ... even if Section 523(d) makes the fee award an element of the Defendant's case in some respects." *(Id.)*(citing *Green v. Nevers*, 196 F.3d 627, 631 n. 2 (6th Cir. 1999); *Budinich v. Becton Dickinson and Co.*, 486 U.S. 196, 201 (1988) ("... the effect of an

unresolved issue of attorney's fees for the litigation at hand should not turn upon the characterization of those fees by the statute or decisional law that authorizes them.")). The bankruptcy court properly rejected FIA's argument that the pendency of the appeal precluded a decision on an attorney fee issue.

## Conclusion

For these reasons, the decisions of the United States Bankruptcy Court for the Western District of Michigan in Bankruptcy (Bankruptcy Case No. 09-04644 and Adversary Proceeding 09-80323) that Plaintiff here appeals are **AFFIRMED**.

    /s/ Robert J. Jonker
    ROBERT J. JONKER
    UNITED STATES DISTRICT JUDGE

Dated: March 29, 2011